I listed for oral argument this morning is Rosemary Nick v. Township of Scott. Mr. Bremer. Thank you. May it please the court. I'd like to reserve three minutes for rebuttal if I might. Granted. My name is David Bremer. I'm representing Rosemary Nick. Your honors, this court has power to hear Mrs. Nick's federal takings claims because Williamson County's rightness doctrine is no longer jurisdictional but prudential. So that has to do with the takings clause, correct? Yes, your honor. And you've been asked to supplementally brief the standing question, have you not? We were asked to do that. So why don't we start with that since obviously that's a question on the minds of some members of this panel. Okay. Well, as we explained in the supplemental briefing on the standing question the court asked was about the facial fourth amendment claim, whether a provision in the township's ordinance that authorizes township agents to by Ms. Nick. Actual, based on some damage to her, some harm to her that is actual and imminent, not conjectural or hypothetical. Well, the answer to that, your honor, goes back to what this court and other courts have said about facial claims. As this court said in Markovich that 609 F3 264 F73, excuse me, a facial attack simply tests the law on its own text alone and does not consider the facts or circumstances of a particular case. And we know that, but that doesn't answer my question. I'm sorry to postpone that, but the injury here is the text of the ordinance allows and authorizes the township to enter upon Mrs. Nick's property, any portion of her property. Unless they are going to enter on her home or her cartilage, there is no fourth amendment violation and no injury, correct? Unless they enter on, yes, cartilage or yards. And what do we have in the record or what do we have at all that would indicate that they have any intention of going into her home or her cartilage? Well, you don't have anything in the record on that, but you don't need anything on the record at all. How is she harmed? She's harmed because you have to assume the law means what it says it means. Well, if we know what the ordinance says, but we also know that her own claim in the district court was resolved on the open fields doctrine, right? Yes, sir. So let's assume that this ordinance didn't exist at all. Officials would still have the right, would they not, to go into the open fields for an appropriate purpose? They would, but they would not. So the ordinance does no work here, to use the language of Patel, I believe. Well, it does do the work of letting the town go into any other non-open field places. That's what it says, upon any property. Okay, which in a circular way gets us back to the question that Judge Rendell just asked, and that is, that being the case, what has been shown that suggests the essence of standing here? Something that is actual and imminent, not conjectural or hypothetical, as to her. Right, and in my opinion, that's actually simpler than it seems. She owns property that is subject to a search right now. There's no dispute about that. There's no dispute that the township, it's not searching for cemeteries, your honor. It's searching any property for the existence of where a cemetery or a buried ground or a stone might be. So because she owns property that's subject to an evasion, it's just like any injury inquiry into the property context. Her property is now open to an evasion by the town. But is that enough for standing? Absolutely. There's case law, Clapper, a free speech coalition that says in the Fourth Amendment context, there has to be some imminence of the Fourth Amendment violation. Well, there isn't any here, is there? Well, in the facial context, there is enough for standing, your honor, because in the facial context, you are always in a position where you're asking whether this ordinance could... Really? Does the fact that she's seeking declaratory relief, does that make a difference at all as opposed to damages? Well, it makes a difference because in a facial context, that's what you are seeking. You do not have to wait for an actual injury to occur before you even challenge it. That's the point of declaratory relief. The Supreme Court has said a number of times that you're not in a position of having to be injured before... Does that answer the question that you still need to show more to show the imminent or immediate injury? Correct. And I don't think you have to show anything more than the fact that you are subject to a law that allows the town to come into injury. What's your best case for that proposition? I believe there's a case called Mitchell, and I'm sorry I did not brief this particular issue more completely, but there's a number of... I'd be happy to submit a letter. There's a number of Section 1983 claims that deal with injury in the 1983 context. Fourth Amendment? Yes. Are they Fourth Amendment or are they First? No, they're not First Amendment cases. There are a number of cases that deal specifically with the proposition that you have to wait for an injury in the Section 1983. You don't have to wait, but there has to be some threat or imminence that is going to be in an unlawful manner. And there is, Your Honor. There is a threat right now that this law is going to be used at any time for the township to come in to search for more... Her home and her curvilage? And yards, curvilage, anywhere that's not open to us. How far away? Is it in the record how far away these stones and this cemetery aspect is from her home? No, Your Honor. It's not anywhere. Has she been cited already? She has been... Yes, Your Honor. She has been cited for failure to comply with the sanctions. Under the citation, what is the sanction? She's fined. She's subject to fines for not complying with the ordinance. The fine hasn't been assessed against her. There has to be an enforcement action, does there not? No, not for a facial claim, not for... Okay, I'm not talking facial. I'm talking in terms of the fine. She's not been told right now to write a check for $500 a day, has she? No, but she... That would happen in an enforcement action, would it not? She's been ordered... No, it wouldn't. She's been ordered... She sued before that... The notice of violation, did it say, please come in and give us $500 a day? No, it said you're subject to fines if you do not comply with the ordinance. And how would that happen? Wouldn't that happen in an enforcement action? It would if they wanted to enforce it that way, it would, you're not required to wait for civil enforcement actions to file, to challenge a law that's violating your constitution. I understand that's your position. Assume that we were to enjoin the inspection provision of this ordinance, wouldn't the township officials still be within their rights to continue inspecting this next cemetery? No, they would be within the rights... Aren't they still... Don't they still have available the Open Fields Doctrine? They have available the Open Fields Doctrine, but they're not claiming that they can only go into open fields. They are claiming that they can go upon any property. But your Honor, even if you believe that there's a standing problem here or that this is compliant... I thought they were saying that we had to read it in context with the Open Fields Doctrine, which is limiting the ordinance on its face. There's an issue as to whether or not that saves it, but if that's their claim, that's inconsistent with what you just said. What I'm saying is that the Open Fields Doctrine, that this ordinance doesn't do any work in the open fields context, but it's not limited to the open field context. That's Patel, I understand that. Right, so this ordinance goes beyond the open fields context and you have to assume that that's what it means. In Patel, for instance, the government argued there, well, court, you should assume that we're going to get a warrant, even though the ordinance doesn't have a warrant. What was the stipulation that parties entered into in Patel? Well, the stipulation that had been applied to them. But the point I'm trying to make... Certainly distinguishes the situation from our case here. So even if you believe that there's some Fourth Amendment, there's a problem here with standing or that this complies with the Fourth Amendment, it still violates the Taggings Clause, the same provision. All right, let's try to segment this, but let's also try to move beyond that. Assuming you have standing for purposes of argument, we get into the merits and your point relative to property, I think gets us into or allows us to discuss how, as Judge McKee has asked, this ordinance should be read. Should it be read narrowly or more broadly? Does any property really mean any property? Yes, it really means that. And again... It means an automobile? Excuse me? Does it mean an automobile? That's property, it's personal property. No, I think because the ordinance on a term is talking about real property, it's permissible. But going beyond that, I don't think it's permissible. Again, in Patel, the court was asked there to assume that they were to read a warrant requirement into the provision and the court said, no, we look at the ordinance as it's written. And this court has said that too. We just take it on its text alone and we're not going to read in more protections and more assumptions in your favor, government, because we have to assume you meant what you meant. And when you say any property, we have to assume you mean that you may not go into every curtilage or any curtilage today or tomorrow. It doesn't mean that two weeks from now or a year from now, then another inspector is going to use that authority to go search around people's property. We want to make sure you have an opportunity to address your Fifth Amendment claim here. And I'm curious, what is it that Ms. Nick is asking for here? Because there is a somewhat curious and unusual procedural history in this federal action. Is she seeking compensation? Is that what she wants? On her as-applied federal takings claim, she is seeking compensation. Then why is she not proceeding in inverse condemnation? I mean, the Pennsylvania Amendment Domain Code is clear and the remedy is there and that's how these things are usually pursued. Well, the reason she didn't pursue inverse condemnation is because she attempted to use a viable procedure in the state court to determine whether the ordinance is unconstitutional, whether it's a taking. And the township argued you have to have a civil enforcement action first. But under federal law, you don't need that under Sackett and similar cases. So I'm not sure I understand your argument now. Are you saying she isn't seeking compensation, but she is rather seeking a declaration that the ordinance effects an unconstitutional taking in some way? For example, that somehow this is not being taken for a proper public use? She's seeking both. She's seeking a declaration and an injunction that the ordinance on its face takes private property because it authorizes the general public to enter her property. This really then comes under compensation. There's no dispute. They can take a public property for a public use. The issue then becomes the takings clause, whether or not adequate and fair compensation has been paid. May I answer the question? Yes, please. That is the issue in an as-applied takings claim, but not a facial claim. In San Remo, the court said that you can seek injunctive relief for a facial takings claim. That's why we're seeking that because the court said we could do that. On the as-applied takings claim, yes, you need typically under Williamson County, prudential doctrine, you may have to go seek compensation in the state court, but it's not a requirement any longer. Are you saying that if there's a facial taking with adequate compensation, that gives you a Fifth Amendment claim? It gives you a Fifth Amendment claim if a law on its face takes property in every instance it applies and there's no mechanism or guarantee within the law for compensation. That's the hook. In my question, I asked you to assume that there is a mechanism for compensation and let's assume that the mechanism will result in fair compensation. I don't understand how in this context, we're really talking about an easement. It's like a Nolan contract. In Nolan itself, the court didn't require any state exhaustion or exhaustion of compensation. It just invalidated the demand that they have for an easement. To answer your question, if there is within the ordinance a guarantee or provision for compensation, which is not here, then no, then you wouldn't have a takings claim, but that's different than saying you have to go to state court and this would be a third suit before you can have your date in court on whether a classic per se taking is occurring. There's no question here that- A classic per se taking is exquisitely a question of state law, isn't it? Under the eminent domain code, unless you can find some constitutional infraction. No, your honor, it's not. Williamson County's right to this doctrine is not jurisdictional. This court has power here to claim some of our rights, but why should we? With the availability under the eminent domain code and as an old Pennsylvania lawyer, emphasis on old, old, old. I don't have the gray hair. I did a lot of condemnation work, hand in over checks for estimated just compensation that a coincident would have taken. I don't understand why you wouldn't go the traditional route. Well, again, on the as-applied claim, which is what we're talking about here because a facial claim does not require seeking damages or compensation in order to bring- What good does it do her to have a declaration? It will invalidate the ordinance. That's the purpose of a declaration and a facial taking because the ordinance is causing a taking for- But it's only going to be invalidated if she's not compensated for it. So that's really the remedy. It's invalidated if there's not- They haven't refused to compensate her. Yes, they have, your honor. They have not paid compensation. They don't offer compensation. When did she seek it? When did she seek compensation? She's been seeking compensation. She's been seeking to have the township held accountable for taking a state- No, that's not the same thing. Mr. Kramer, even if they have refused it- That's still not a reason not to pursue inverse condemnation, is it? In fact, it's precisely a reason why you should then- Pursue inverse condemnation. No, you act ... With respect, that is the understanding before Williamson County was recast as a discretionary prudential concept. And so your question was, is there a good reason? The question really is, is there a good reason not to exercise the power that you have? You have the power. So what reason is there not to exercise it? The town hasn't compensated. They haven't offered compensation. There's no provision in the ordinance for compensation. They've resisted compensation requiring Mrs. Nick to go through state court yet again, a third lawsuit- What's the status of the state court proceeding? Is it pending or is it- It's just in limbo because the court said that- So it's pending. It's pending for this reason that the court said it cannot decide whether there's a taking until the township itself initiates another civil enforcement action, which would be a fourth lawsuit for her to determine whether there's been a basic taking in this case. As we step back and we see, there's no compensation here requiring her to go to state court again. It's inefficient. It's unnecessary. Frankly, it's unjust. Well, I agree with you about the efficiency question. Ultimately, it can be ours to resolve, but I confess I still can't quite figure out why you've not pursued the inverse condemnation. But we'll have you back on rebuttal and we'll hear from Mr. Speck, is it, about this extraordinary ordinance. Yes, it's extraordinary. Mr. Speck? Good morning, your honors. My name is Thomas Speck. I'm from Marshall-Bennehe. I represent the appellees and I'm going to focus, obviously, on the standing issue and the exhaustion issue. And that is certainly the place to start, notwithstanding my completely gratuitous reference to the ordinance. But you have argued, I think, in your red brief initially, Monell. And for the life of me, I'm trying to figure out what your position is and how it is at all, how Monell is at all helpful to us with respect to standing. Well, this claim was originally made under Monell. The facial claim was made under Monell. The district court appeared to address it under that standard as well and relied on the fact that there was no constitutional injury and that there could be no Monell violation. However, with this court's question regarding the standing, I think you focused the issue a little bit more and I think you hit the nail on the head that Ms. Nick has abandoned her as-applied claim. The claim was found against her that there was no violation here. But the mere abandonment does not preclude her from being able to show, being able to demonstrate, if she can, standing for purposes of the facial. I actually misspoke a little bit there. It's been more than abandoned. It's been found by the court that there is no as-applied violation. That doesn't really matter. Well, if there is no as-applied violation, then how could there facially, in all circumstances, be an unconstitutional? Well, there could be a threat. They could have said, you know, if you don't do this, then on Monday we're coming into your, we're going to search your circle, whatever that is. Well, I'm not sure you're helping your argument here, Mr. Speck. I mean, isn't the question, what if anything has been demonstrated or suggested that is actually limited to you? Well, in the lower court, and it's cited in the 1029-15 opinion at page 27, note 6, that Ms. Nick admitted below that any effort at Scott Township to enforce the provisions of the ordinance is unlikely. So I don't know what kind of imminence there could be. Wait, haven't they already done that, though, haven't they? Well, it was, it hasn't, there hasn't been a civil enforcement action filed by the township. The fact that someone probably came on her land, concluded that she was in violation of the ordinance, and read out some kind of a written summons, or whatever the process is in the county, is saying that's not sufficient because they've not taken steps to enforce the enforcement action. Right, and this is a Fourth Amendment claim. The claim is going on to our property. And this court, I mean, the district court already determined that that wasn't as applied, that statute wasn't applied under the Constitution. Right, because it was open fields. So there's a distinction as to what they searched. They searched the open fields, and they could do that permissibly. Correct. And you would concede, would you not, that if Ms. Nick could demonstrate that there was some actual and or imminent danger of a search taking place of a cartilage, for example, that this would be a completely different case. It would be, but the only evidence on the record, and the only evidence in her complaint, and this was on a motion to dismiss, is that the cemetery is 90 yards in from the edge of her property, which I believe is many, many, many, many acres of property. And that, you know, they've located the cemetery. How close is the house to where the cemetery is? I don't believe it's close, Your Honor. It's not clear from the record, but it seems to be close to the edge of this vast acreage that she owns. It's 90 acres. You're making it sound like the Ponderosa. It's 90 acres. Yeah, 90 acres, which that's a lot to me. Much of this audience doesn't remember Bonanza. That's probably true. But the fact you just put a title on it suggests to me that you do, in fact, remember. And, Your Honor, you know, with regard to the standing, I believe that the case is that cited the Patel case. In that case, there had been unconstitutional searches of the motel, and there was a stipulation, I believe, in that case distinguishing it from this case, where there was a finding that there was no as-applied violation. And the Heffner case, the only holding I could really find in that case that was relevant to this is that a finding of facial invalidity negates any need to conduct an as-applied challenge. But in this case, the as-applied challenge has already been denied and had not appealed. So, you know, I'm confused. But I'd argue with my colleague that this is an incredible ordinance. But if we factor into it Patel and assume that it only applies to the open fields doctrine, it does absolutely nothing. Which suggests to me that limiting it in that sense is not appropriate, because that would suggest that the township, city council, borough council, whatever the entity is, took a totally meaningless action, and then took steps to enforce a totally meaningful action. And we're all here because of something that was totally meaningful. Meaningless, not meaningful. Because they could have done this under the open fields doctrine. The problem, obviously, is the privilege in the homestead part that is opened up under this ordinance, which I think you would even agree they can't search as in some kind of a warrant. You're correct. But again, that's just a hypothetical situation which all the Fourth Amendment cases say this court can't engage in. The only search before this court was the search that was found to be permissible. And because of that, Ms. Nick can't raise the standing of others. Well, I don't think she's trying to raise... She's raising her own standing, not their own. Well, I think on the facial, she's alleging that it's unconstitutional as applied to everyone else in the township. No, I don't understand her to be arguing that at all. I think she has acknowledged that if she can't show that there is some imminent damage, personal damage to her, Fourth Amendment claim being inherently personal in nature, that she can't make outstanding. Right. She claims she can. Let's assume, then, that she can establish standing here such that this panel needs to reach the merits of the claim. I characterize this as an extraordinary ordinance. There were other adjectives I had in mind. Do you know, and I realize this would be outside the record, but do you know of any other municipality in Pennsylvania that has adopted an ordinance of this nature? Well, I know there is a state law that leads it up to municipalities and townships to regulate cemeteries within their borders. Well, the police power of entities is very, very broad. Right. We all know that and the public safety and health and welfare. But I'm not questioning that this comes within the police power of the municipality. I'm just interested in knowing whether any other, well, do you know of any other municipality that's ever enacted such an ordinance? I don't, Your Honor. And again, the only thing I know of, I believe in Title IX, there's a bunch of sections that talk about maintaining the cemeteries. And I don't imagine there are a lot of noise complaints, for example, emanating from the cemeteries. No, I think. Okay. I'm trying to conceive of why a legislative body would do such a thing. I believe it stems from the fact that the burial places of humans are sacred and this ordinance is meant to try to preserve that. She alleged retaliation in violation of the First Amendment. Yes, but that claim was dismissed and not appealed. Why was that? To be honest, Your Honor, I'm not sure the exact reason. I didn't concentrate on that because it was dismissed and it's not before the court. All right. You have argued here, I think, that if we need to get to the merits, you would have us look to a narrow construction of the ordinance. Could you explain that position, please? I mean, Your Honor, that position is based on where that language in the statute is located, of any property it's located. So it doesn't really mean any property in the potential breadth of what property constitutes? No, Your Honor. It doesn't say real property? No, it doesn't say real property, but it does say any property, but it's located under the inspection provision for... It says any property within the township. Right. Any property within the township. Right. So is that to say it's her property versus someone else's property? I'm sorry, say that again? And on her property versus on someone else's property and someone else's property. It's not any... Right. Right, Your Honor. Obviously, you're not going to... And I think Your Honor made a great point. You're not going to search a gas station parking lot. You're not going to search, you know... Or a cemetery. Right. You can do a little bit of searching. I mean, that's logical. What about the argument that I also believe you've made that the officers can only conduct one-time searches? Well, once you have... Where does that appear anywhere in the plain text of the ordinance? Well, the ordinance talks about locating the cemetery. And you have... They locate the cemetery. So once you locate the cemetery, you're obviously not going to search the property for a cemetery again. Well, why not? Why couldn't there be another cemetery there? Excuse me, Your Honor? Why couldn't there be another cemetery there? Well, I guess if there was another cemetery, you could search the property. But, you know, again... How would you know that without searching the property? They were basing it on information that was provided to them. And I went to search the property in that respect. But there's the obligation to keep it free of debris. And wouldn't they be able to go in every year and make sure that it was free of debris? Or even more often than that. Doesn't the text of the ordinance plainly contemplate that the officers are going to come back for inspection? I believe if it's not taken care of, that's what they would do to re-inspect it. But how do they know it's not taken care of? I think the ordinance is silent on that. I, you know, that's... I'd be speculating on that point, but... Let's move to the Fifth Amendment claim here. And Mr. Bremer has made, I think, a very valid point. That this panel may overlook exhaustion here for prudential reasons. He's correct in that. It is a prudential... The Williamson County Doctrine is a prudential doctrine. He's right in saying that. However, he alleges a taking, which as a taking requires that it be a taking of property without just compensation. All right. She hasn't been compensated for an easement or anything else here, has she? She has not. All right. So, I mean, it would certainly seem when the facts allege that what we have gives rise to a taking, right? Well, she never pursued state remedies. She never filed an inverse condemnation action. Her action that is down there doesn't seek compensation. And I believe the doctrine talks about at the time of the taking what she could have done. And she could have filed an inverse condemnation action at that time. But that's not the question when it comes to overlooking exhaustion, whatever it is. No, Your Honor. But again, that action doesn't seek compensation. The state action that's down there now, it just seeks to prevent the enforcement of the ordinance and to find it unconstitutional. It doesn't seek compensation. But we might say if she, we could see, fast forward, if she goes back to state court and amends and says, oh, by the way, I want compensation, then the attorney is going to say, oh, wait a minute, the ordinance hasn't been enforced against her. We just sent her a notice of violation. So she can't seek compensation. I mean, she's going to be kind of whipsawed here. Prudentially, we might say, you know what? You know, pony up some money. People are passing to and fro, as it is, so that the property may be continuously traversed, according to the ordinance. You know, let's determine how much money she should get. Well, I think that if she filed a petition for a board of view down there, based on the fact that there's a cemetery on her property that she's now being told to maintain, that they could easily determine, you know, what sort of compensation she's entitled to without a civil enforcement action. And you wouldn't raise the fact that she hasn't brought civil enforcement as a defense? I don't know what they would raise down below. But I don't think that would be, I don't think that would be a valid, you know, answer to, you know, what the compensation would be. You wouldn't raise it, though. I don't, I don't want to waive any defenses that they might have. But I think that... That sounds like you're suggesting the rubric. Well, I think that the only, the only action down below that could determine whether or not she's entitled to just compensation is an eminent domain action. I've never prosecuted or filed an eminent domain action. But I don't think a civil enforcement action would prevent her from getting compensation. The defense on civil enforcement action was that they couldn't determine whether or not it was constitutional. And the court, the lower court agreed with that. Do I, do I read your brief correctly that you are suggesting that what the ordinance affects here is merely a temporary but not a permanent taking? Because there's a limitation to daylight hours. Yes, and there's also language in the statute. How does that suggest a lack of permanency? Well, the cases that talked about the permanency talked about like a permanent... And they're cited in my brief. But are you suggesting, which may be the case given legislative assertions on the EPA, are you suggesting there will come a time when there will no longer be daylight? Why is it that she can't come in during the day? I think if you read the language of the statute strictly, it says it must be open during daylight hours. And that unreasonable restrictions on visiting the cemetery can't be placed. Permanent doesn't suggest all hours. It sounds to me like that's what you are arguing. Permanent is the equivalent of 24 hours a day. Well, the cases seem a little more permanent. Permanent doesn't expire in six months. This right is a permanent and continuous right to pass to and fro so that real property may continuously be traversed even though no particular individual is permitted to station himself permanently upon the premises. That would be right out of the Supreme Court, would it not? But she can, she can still sell the property. She can still do what she wants with the property. Other than get rid of the cemetery. So how does ability to sell? Somebody has an easement on my property. I can still sell the property. It's subject to the easement. But again, the reason I raise that argument is because some of the cases appear to suggest, and they are cited in the brief, that it has to be a lot more permanent than what is occurring here. Maybe you can just leave. I'm having trouble. I think my colleagues are too. But you're saying it's not permanent because the taking only exists during the day. It's an easement during the day. Therefore, it's not permanent because it doesn't go in the night. I don't understand that argument at all because, as I said earlier, somewhat facetiously, I'm hoping and assuming the daylight rotation will continue at least for a lifetime. How is that not permanent? Your Honor, let me see if I can find one of the cases that I have cited here. Maybe Copernicus was wrong. Let's hope not. Galileo was proven right. Your Honor, I apologize. They are in my brief, the cases that I cite. And that was my argument, that it was more of a temporary traversal. That seems to me due to the value of the taking. Maybe it would reduce, but otherwise be more substantial in taking, because it only occurs during daylight. But that wasn't part of the problem. This was more of an evaluation, it seems. Actually, your brief talks about the fact that the state can direct the removal of remains as arguing that it's not permanent. I don't get that. That seems to be what you're pointing to, a state statute. Yeah, if the remains were to be removed from the place, then it wouldn't be a cemetery anymore. You're welcome. All right. Thank you very much, Ms. Beck. We'll have Mr. Bremer back on rebuttal. Thank you, Your Honor. I want to get back to Judge Smith's question about why not inverse condemnation. Why not inverse condemnation? Yes, excuse me. Why didn't Mrs. Beck pursue an inverse condemnation action initially? And practically speaking, the reason is very simple. Part of her claim is that the ordinance on its text, on its face, is unconstitutional as written. And you do not have to seek post takings damages to make out such a claim. So her going to state court seeking a declaration that this is unconstitutional as written, because it takes property in every instance without any mechanism for compensation. But it's only unconstitutional if it's taken without compensation. It's not unconstitutional as a taking, unless it's a taking without compensation. I mean, the two go together. And the mechanism for compensation doesn't have to be in his ordinance, it's in the state statute. You've got a mechanism for compensation. It doesn't need on a face. If an ordinance takes property in every instance, so it's not just Mrs. Nick, but it's everyone. If there's no mechanism for compensation in that law, what the Supreme Court has said is that you can seek equitable relief because you're not seeking damages or just compensation. You're attacking the ordinance as it's written. You're talking about two different questions. And frankly, I've struggled from the point we began talking about the Fifth Amendment claim to understand whether your client is seeking compensation, which when I asked it the first time, I believe you replied that she was or ultimately is. But then we got into the discussion of an ability to attack the propriety of the taking itself, or perhaps the constitutionality of the taking itself. But I don't understand how your client is doing that. For example, she doesn't challenge at all the power or authority of this municipality to engage in a proper taking, right? I mean, this isn't some entity that cannot take property through eminent domain. She doesn't challenge public purpose. So what other possible challenge can you have to the taking itself other than that it is without just compensation? Yes, that is the challenge. But there are two ways to do that. One is an as-applied, which you're saying, okay, so I'm conceding to the fact that you're invading my property and all I want is post-taking damages. The other one is I want to stop the taking because you haven't secured me any mechanism for compensation. So I want to stop until you do that. That's a facial takings claim. So she's trying to involve the Supreme Court sovereign has done that. The Commonwealth of Pennsylvania has done that through the establishment of substantive rules in the eminent domain code together with a procedure that allows those rights to be vindicated. I agree that anything that the municipality might seek to do would be remorse surpluses, right? And maybe even ultra-virus. Actually, that is not the understanding. I refer you to the Horn case in which the Supreme Court said when the government that's causing the taking has taken property without compensation, there is a case in controversy and alternative state remedies are irrelevant. So I was trying to explain why she didn't, practically speaking, seek inverse condemnation because she's allowed to seek an injunction in certain instances, but it's not simply not required. The bottom line is that inverse condemnation is no longer required. The township still hasn't provided any good reason why Mrs. Nick should be required to go and file a third lawsuit or maybe a fourth if the township has to file a civil enforcement action for her to get a day's work. We understand your position, Mr. Brimmer. Thank you very much. Thank you to both of counsel. This is an interesting case and, as I said, I think a rather extraordinary ordinance that the township may want to take another look at. Well, we'll call the next matter.